IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| ANTHONY NELSON CHARLTON,<br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner,<br>Social Security Administration,<br>    Defendant. | Civil Action No. 5:15-cv-00040<br><br>MEMORANDUM OPINION<br><br>By:    Joel C. Hoppe<br>United States Magistrate Judge |

Plaintiff Anthony Nelson Charlton asks this Court to review the Commissioner of Social Security's ("Commissioner") final decision denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f. The case is before me by the parties' consent under 28 U.S.C. § 636(c)(1). ECF No. 13. Having considered the administrative record, the parties' briefs and oral arguments, and the applicable law, I find that substantial evidence supports the Commissioner's final decision.

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. *See* 42 U.S.C. § 405(g); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

1

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id*., but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). Social Security ALJs follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the applicant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); 20 C.F.R. § 416.920(a)(4). The applicant bears the burden of proof at steps one through

four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

## II. Procedural History

Charlton filed for SSI on December 21, 2011. *See* Administrative Record ("R.") 169, ECF No. 11. At that time, he was forty-four years old, R. 171, and had worked as an auto mechanic, construction worker, and grounds keeper, R. 210–11, 219. Charlton alleged that he had been disabled since March 1, 2010,[1] because of high blood pressure, high cholesterol, depression, hyperlipidemia, abdominal hernia, and diabetes. R. 218. Disability Determination Services ("DDS"), the state agency, denied his claim initially and on reconsideration. R. 58–69, 70–82. On February 11, 2014, the ALJ held an administrative hearing at which Charlton appeared with counsel. Charlton testified about his medical conditions and the limitations those conditions caused in his activities of daily living. A vocational expert ("VE") testified about Charlton's work experience and his ability to return to his past work or to perform other available work. R. 31–56.

The ALJ denied Charlton's application in a written decision dated February 28, 2014. R. 12–24. He found that Charlton had severe impairments of degenerative disc disease, diabetes mellitus, diabetic neuropathy, polycythemia vera, obesity, obstructive sleep apnea, mood disorder, and history of substance abuse in remission. R. 14. These impairments, however, did not meet or equal a listing. R. 14–16. The ALJ next determined that Charlton had the residual functional capacity ("RFC") to perform "light work"[2] with some postural and environmental

---

[1] Charlton also listed January 1, 1995, as the alleged onset date. R. 193, 218.

[2] "Light" work involves lifting no more than twenty pounds at a time, but frequently lifting objects weighing ten pounds. 20 C.F.R. § 416.967(b). A person who can meet these lifting requirements can perform light work only if he or she also can "do a good deal of walking or standing, or do some pushing

limitations. R. 17. He also limited Charlton to performing simple, routine tasks that required sustained concentration for two hour segments and limited contact with others. *Id.* Relying on the VE's testimony, the ALJ concluded that Charlton could not perform any of his past relevant work, but could perform other available jobs, including inspector/grader and cleaner. R. 24. The Appeals Council declined to review that decision, R. 1–3, and included additional evidence in the record, R. 4, 646–705. This appeal followed.

III. Discussion

Charlton argues that the Commissioner's decision is not supported by substantial evidence for two reasons. First, Charlton argues that the ALJ improperly discredited his report of shortness of breath based, in part, on Charlton not following his doctors' recommendations to stop smoking. Pl. Br. 4, ECF No. 18. At oral argument, Charlton's counsel conceded this argument. Her concession is plainly correct. A pulmonary function test revealed that Charlton has a mild obstructive lung defect and that his lung volumes were within normal limits. R. 516–17. Physical exams repeatedly showed clear lungs and normal respirations. *See, e.g.,* R. 471, 474, 495. Although Charlton reported experiencing shortness of breath, he continued to smoke cigarettes against his doctors' recommendations to quit. R. 495–96. As Charlton's counsel now concedes, the ALJ could question the severity of Charlton's report of breathing symptoms based on his failure to heed his doctors' recommendations to stop smoking. *Whitt v. Comm'r Soc. Sec.*, 1:12cv52, 2013 WL 4784991, at *57–59 (N.D. W. Va. Sept. 6, 2013); *Waters v. Colvin*, No. 4:12cv23, 2013 WL 2490185, at *5, n.7 (W.D. Va. June 10, 2013). Considering the mostly normal medical evidence and the adequate grounds for the ALJ's credibility determination, I find that the ALJ's assessment of Charlton's respiratory issues is supported by substantial evidence.

---

and pulling of arm or leg controls while sitting." *Hays v. Sullivan*, 907 F.2d 1453, 1455 n.1 (4th Cir. 1999).

In his second argument, Charlton asserts that the ALJ's RFC determination should have included a limitation in handling and manipulating objects. Pl. Br. 3. At the administrative hearing, Charlton testified that he experienced numbness, tingling, and cramping in his hands. R. 45. He further testified that his grip was pretty good, but his hands cramped when he held a screwdriver or ratchet. R. 45–46. Nonetheless, he could hold and write with a pencil and handle small items like coins, buttons, and zippers. Charlton attributes these limitations to diabetic neuropathy, peripheral polyneuropathy, Pl. Br. 3, and osteoarthritis, R. 45.

In a function report, Charlton indicated that he could and did do house and yard work, but his depression and health took away his desire to perform these activities. R. 252–53, 301–02. He lived with his mother, and he prepared meals and shopped for groceries for them both. R. 253, 302. He could drive a car. R. 253, 304. Charlton worked on cars and did small engine repair, although he reported doing them "very little." R. 254, 299, 303. He reported that he was limited in numerous abilities, including using his hands. R. 255, 306.

The medical evidence relevant to Charlton's hand complaints shows that on November 6, 2013, he visited Susan Miller, M.D., for cervical and knee arthritis. R. 590. Charlton said his knee and neck pain were the worst, and he wanted to focus on them, but he also reported experiencing severe pain and cramping in his hands. *Id.* He reported occasional numbness in his lateral forearm and all fingers bilaterally. *Id.* On examination, Dr. Miller found negative Spurling, Tinel, and Hoffman tests bilaterally, normal strength, and no sensory deficit. R. 594–95. She noted Charlton's history of poorly controlled diabetes mellitus and his hand and foot paresthesias, including peripheral neuropathy. R. 595. Dr. Miller referred Charlton for evaluation of his intermittent upper extremity numbness. *Id.*

5

On November 21, Jeffrey Jenkins, M.D., evaluated Charlton's neck pain and hand cramping and numbness. R. 587. Dr. Jenkins noted that Charlton had a history of cervical neck fracture and that he reported experiencing intermittent lateral forearm and bilateral finger numbness, which began one year earlier and was aggravated by ratcheting, but alleviated with rest. *Id.* Physical examination showed full strength and sensation in all extremities. R. 588. Durkan's test, which is used to diagnose carpal tunnel syndrome, was positive on the left. *Id.* Nerve conduction studies revealed "mild distal sensory conduction slowing of the median nerves bilaterally," and a needle Electromyogram showed "equivocal evidence of mild chronic neurogenic changes." R. 589. Interpreting the study results, Dr. Jenkins identified evidence of mild bilateral carpal tunnel syndrome, but this evidence could instead indicate mild generalized peripheral neuropathy, which could be caused by Charlton's diabetes. *Id.* He found no evidence of cervical radiculopathy. *Id.*

On January 7, 2014, Charlton reported to Dr. Miller that he had been wearing hand splits, which helped with his hand cramping. R. 634. He did not wear the splints while sleeping, and his hands tingled in the morning. *Id.* Dr. Miller advised Charlton to continue wearing the hand splints and to wear them at night. R. 638.

As to medical opinion evidence, Gregory W. Shawver, M.D., Charlton's primary care physician, stated that Charlton did not have any physical impairment that would prevent him from working. R. 482. The state agency physicians found that Charlton could perform medium work[3] with no manipulative restrictions. R. 66, 78–79. All of these opinions preceded the medical evidence about Charlton's hand cramping.

---

[3] "Medium" work involves lifting no more than fifty pounds at a time, but frequently lifting objects weighing twenty-five pounds. 20 C.F.R. § 416.967(c).

Charlton challenges the ALJ's RFC determination because it did not include a limitation in handling or manipulating. I cannot agree that the evidence supports such a limitation. A claimant's RFC is the most he can do on a regular and continuing basis despite his impairments. 20 C.F.R. § 416.945(a); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is a factual finding "made by the Commissioner based on all the relevant evidence in the [claimant's] record," *Felton-Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011) (per curiam), and it must reflect the combined limiting effects of impairments that are supported by the medical evidence or the claimant's credible complaints, *see Mascio v. Colvin*, 780 F.3d 632, 638–40 (4th Cir. 2015). The ALJ's RFC assessment "must include a narrative discussion describing" how specific medical facts and nonmedical evidence "support[] each conclusion" in his RFC finding, *id.* at 636, and explaining why he discounted any "obviously probative" conflicting evidence, *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977); *see also Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). In discharging his duty to provide an assessment of a claimant's "work-related abilities on a function by function basis," the ALJ must make specific findings about the impact of a claimant's impairments and credible, related symptoms on his ability to work. *Mascio*, 780 F.3d at 636; *accord Monroe v. Colvin*, -- F.3d --, 2016 WL 3349355, at *9–10 (4th Cir. June 16, 2016).

The ALJ reviewed the medical evidence and Charlton's statements about his limitations, including in using his hands. R. 17–18. Among other reasons for finding Charlton's report of limitations not entirely credible, the ALJ found that physical examinations did not show that Charlton had significantly decreased strength, range of motion, or sensation in any extremity. R. 21. Although this analysis addresses all of Charlton's extremities, it also accurately depicts the examination findings related to his arms and hands. Additionally, nerve studies showed only

mild carpal tunnel syndrome or mild diabetes-related neuropathy, and, according to Charlton, his symptoms improved after he began using hand braces. This evidence supports the ALJ's decision to discount Charlton's report of handling limitations and provides ample support for not including such a limitation in the RFC.[4] Charlton does not otherwise challenge his RFC. Accordingly, I find that substantial evidence supports the ALJ's RFC determination.

## IV. Conclusion

For the foregoing reasons, I find that substantial evidence supports the Commissioner's final decision. Accordingly, the Court will **GRANT** the Commissioner's motion for summary judgment, ECF No. 19, **AFFIRM** the Commissioner's final decision, and **DISMISS** this case from the Court's active docket. A separate Order will enter.

The Clerk shall send certified copies of this Memorandum Opinion to all counsel of record.

ENTER: September 20, 2016

Joel C. Hoppe
United States Magistrate Judge

---

[4] Charlton argues that a handling limitation would preclude him from the jobs identified by the VE. Handling is an activity "required in almost all jobs. Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do." SSR 85-15, 1985 WL 56857, at *7 (1985). This argument fails because the evidence, as discussed by the ALJ, R. 21, simply does not support a significant limitation in handling.